# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE RUNION, | : | CIVIL ACTION NO. 1:15-CV-2159 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| EQUIPMENT TRANSPORT, LLC, | : | |
| Defendant | : | |

## **MEMORANDUM**

Plaintiff Bruce Runion ("Runion") brings this action against his former employer, defendant Equipment Transport, LLC ("Equipment Transport"), alleging that Equipment Transport terminated him in retaliation for filing a workers' compensation claim. Before the court is Equipment Transport's motion (Doc. 27) for summary judgment. The court will grant Equipment Transport's motion.

I. **Factual Background & Procedural History**[1]

Equipment Transport provides drilling and completion services to oil and gas operators. (Doc. 27-2 ¶ 1). Equipment Transport hired Runion on May 6, 2014 as a laborer to perform sundry tasks as assigned including, but not limited to, washing and cleaning tanks and equipment used in the natural gas drilling industry. (Id. ¶¶ 2-5). Runion served on a six-person labor crew under the supervision of Beverly Miszler ("Miszler"). (Id. ¶¶ 6-7). As part of his employment application, Runion executed various documents outlining his rights and duties under the Workers' Compensation Act, 77 PA. STAT. AND CONS. STAT. ANN. § 1 *et seq.* (Doc. 27-3; Runion Dep. 84:13-85:6, Oct. 25, 2016 ("Runion Dep.")).[2]

On September 30, 2014, Runion and fellow laborers were attempting to suction byproduct out of a Newaltas machine into a waste truck. (Doc. 27-2 ¶ 14, Pearson Dep. 10:5-11:2, Dec. 1, 2016 ("Pearson Dep.")). Runion ingested byproduct

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 27-2, 33). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[2] Partial and full transcripts of Runion's deposition have been filed by the parties at separate docket entries. Unless otherwise noted, the court will cite to this deposition *passim* as "Runion Dep." without docket entry citations. The court employs this citation convention for deposition transcripts throughout this memorandum.

2

when the hoses came apart and sprayed the laborers.  (Pearson Dep. 11:2-7; Runion Dep. 43:9-44:2).  Runion informed Miszler, his immediate supervisor, that he was going home to wash off the byproduct and then to the hospital to get "checked out."  (Runion Dep. 44:3-6).  Runion claims to have also informed Miszler that he was "going to tell the hospital that it was going to be a workmen's comp. related incident."  (Id. at 44:6-8).  Runion vomited several times at home and then checked into the Montrose Hospital emergency room.  (Id. at 48:12-49:2).

Emergency room physician Dr. Hassan Khalil attended to Runion and took bloodwork and induced vomiting.  (Id. at 49:21-50:8).  Runion does not recall whether he told Dr. Khalil that his treatment would be a workers' compensation claim.  (Id. at 60:6-15).  Runion testified that he did inform a hospital billing administrator and a nurse regarding same and filled out paperwork related to his injury and workers' compensation.  (Id. at 58:24-60:5).  Dr. Khalil cleared Runion to return to work with instructions to schedule a follow-up appointment and to see a toxicologist because the waste byproduct might contain radon or other harmful substances.  (Id. at 50:11-53:5; Pearson Dep. 18:12-20:7; Witbeck Dep. 26:1-29:13, Nov. 21, 2016 ("Witbeck Dep.")).

Safety supervisor Marc Vincent ("Vincent") visited the work site on October 1, 2014 and spoke with Runion about the incident and his decision to seek medical attention.  (Runion Dep. 66:8-69:12).  Vincent was purportedly upset that Runion had "put [his injury-related medical expenses] through workmen's comp. at the hospital."  (Id. at 69:13-17).  On October 2, 2014, supervisor Bryan Witbeck ("Witbeck") visited the job site and Runion apprised him of the incident and that he

3

"put [his injury] under workmen's comp. to cover for the hospital bill." (Id. at 72:2-24).

Equipment Transport assigned Runion exclusively to flow back containment tank cleaning duties during the two weeks following the September 30, 2014 incident. (Id. at 76:1-5; Doc. 34-6). Runion experienced a significant decrease in scheduled hours over that two week period. (Doc. 34-7). Equipment Transport terminated Runion's employment on October 15, 2014. (Doc. 27-3, Ex. D, Decl. of Beverly Miszler ¶¶ 12, 14, Jan. 16, 2017 ("Miszler Decl."); Runion Dep. 32:2-5, 90:8-14). Equipment Transport listed the following reasons for Runion's termination: failure to wear personal protective equipment; damaging company property; and making terroristic threats against Equipment Transport employees and company property.[3] (Doc. 27-2 ¶ 24). Runion's past disciplinary history also included insubordination, (Doc. 27-3, Ex. A, Tab G; Doc. 27-3, Ex. D, Tab A), and turning in a timesheet containing sexual content. (Doc. 27-3, Ex. A, Decl. of Arthur Streeter ¶ 18, Jan. 16, 2017; Doc. 27-3, Ex. A, Tab C).

Runion clarifies that the reprimand for failing to wear personal protective equipment was due to his visor being tilted at an incorrect angle. (Runion Dep. 88:20-89:14). He denies damaging company property, specifically an eyewash

---

[3] Runion denies this paragraph of Equipment Transport's Rule 56.1 statement and asserts that Equipment Transport terminated his employment in retaliation for his expression of an intent to file a workers' compensation claim. (Doc. 33 ¶ 24). Importantly, Runion does not deny the substance of this paragraph, that Equipment Transport provided these reasons for his termination. Nor does Runion cite to any contradictory evidence regarding same. The record evidence supports the fact that these are the reasons provided by Equipment Transport, regardless of whether they were the "real" reasons. (Doc. 27-3, Ex. A, Tab F & G; Doc. 27-3, Ex. D, Tab A; Witbeck Dep. 33:5-20, 38:3-10).

4

station.  (Id. at 89:15-22).  He also denies making terrorist threats toward Equipment Transport employees or company property.  (Doc. 33 ¶¶ 17, 23, 24).  Runion does not recall being reprimanded for turning in a timesheet containing sexual content.  (Runion Dep. 87:15-88:16).  Runion avers that the true reason Equipment Transport decreased his hours, assigned him to tank cleaning duty, and ultimately fired him was his decision to pursue workers' compensation.  (Doc. 33 ¶¶ 24, 29, 30).  Equipment Transport maintains that the actions listed *supra* were legitimate, non-retaliatory reasons for Runion's termination.  (Doc. 35 at 7-9).  Equipment Transport also points to an industry-wide slowdown as a factor.  (Doc. 27-2 ¶ 32).  Equipment Transport closed the Hallstead, Pennsylvania plant where Runion worked six months later in April 2015.  (Id. ¶ 33).

   Runion initiated the case by filing a complaint (Doc. 1) on November 11, 2015.  Therein, Runion asserts one common law claim: that Equipment Transport violated the public policy of Pennsylvania by terminating Runion in retaliation for exercising his rights under the Workers' Compensation Act.  (Doc. 1 ¶¶ 21-25).  Runion filed an amended complaint (Doc. 19) on March 1, 2016 with leave of court (Doc. 18) for the purpose of clarifying the scope of his protected activity to include expressing an intent to file for workers' compensation.  Following a period of discovery, Equipment Transport filed the instant motion (Doc. 27) for summary

judgment, together with supporting papers.[4]  The motion is fully briefed and ripe for disposition.

## II. **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

## III. **Discussion**

Pennsylvania law provides that employers may terminate employees "for any or no reason" unless the employee is subject to an employment agreement.  Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998) (quoting Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974)).  The Pennsylvania Supreme Court, however, has carved out an

---

[4] In addition to providing responses to each of Equipment Transport's statements of fact, Runion's brief in opposition (Doc. 34) to Equipment Transport's motion for summary judgment includes a section styled as "Counter Statement of Facts."  Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and Runion did not request leave of court therefor.  The court will not consider this portion of Runion's brief as same fails to conform to our procedural rules.

exception to the at-will employment doctrine: employees may bring wrongful termination claims when their termination "would violate a 'clear mandate of public policy.'" McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 313 (Pa. 2000) (quoting Geary, 319 A.2d at 180). The exception applies only when the Pennsylvania legislature formulates a public policy or "a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009) (quoting Mamlin v. Genoe, 17 A.2d 407, 409 (Pa. 1941)).

### A. Public Policy and Workers' Compensation

A Pennsylvania employee may not be terminated for seeking workers' compensation benefits. Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511, 515-16 (Pa. 2005) (citing Shick, 716 A.2d at 1238). Unfortunately, the Pennsylvania Supreme Court has not articulated the precise elements of such a retaliation claim. Theriault v. Dollar General, 336 F. App'x 172, 175 (3d Cir. 2009) (nonprecedential). The Third Circuit predicts that, when presented with the opportunity, the Pennsylvania Supreme Court will apply the familiar Title VII framework to Pennsylvania retaliation claims. Id.; see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). District courts within the Third Circuit have likewise resolved that

federal retaliation standards apply to state law retaliation claims.[5] See, e.g., Sharkey v. Fed. Exp. Corp., No. 98-CV-3351, 2001 WL 21500, at *7 (E.D. Pa. Jan. 9, 2001); Landmesser v. United Air Lines, Inc., 102 F. Supp. 2d 273, 277 (E.D. Pa. 2000); Alderfer v. Nibco Inc., No. 98-6654, 1999 WL 956375, at *6 (E.D. Pa. Oct. 19, 1999). We agree with the *ratio decidendi* of this emerging consensus.

To establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal nexus existed between his protected activity and the adverse employment action. See id. at 174; see also Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for its decision. Moore, 461 F.3d at 342; see also Owens, 103 A.3d at 863. If the employer proffers a legitimate, non-retaliatory reason for its decision, the burden of persuasion returns to the plaintiff to prove that the proffered non-retaliatory rationale is pretextual and that the unlawful motive was the "but-for" cause of the adverse action. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. __, 133 S. Ct. 2517, 2533 (2013); Moore, 461 F.3d at 342.

---

[5] Both parties cite Owens v. Lehigh Valley Hospital, 103 A.3d 859 (Pa. Commw. Ct. 2014), in their briefs. The trial court in Owens relied upon a federal district court's predictive reasoning that the Pennsylvania Supreme Court would apply the Title VII framework to a wrongful discharge claim. Id. at 861 (citing Landmesser v. United Air Lines, Inc., 102 F. Supp. 2d 273 (E.D. Pa. 2000)). On appeal, the commonwealth court declined to endorse this predictive reasoning and instead concluded that a case specific method of analysis was appropriate. Id. at 868-69. However, in light of the Pennsylvania Supreme Court's continued silence on the matter, this court will follow the clear trend of federal courts in the Third Circuit. The parties do not dispute that this is the appropriate framework to be applied to Plaintiff's claim. (See Doc. 28 at 11; Doc. 34 at 10).

Equipment Transport's termination of Runion's employment on October 15, 2014 constitutes an adverse employment action.  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007).  Equipment Transport does not dispute this point.  (See Doc. 28 at 12-16).  Equipment Transport also does not challenge whether there is a sufficient causal nexus between Runion's alleged exercise of his rights under the Workers' Compensation Act and his termination.  (See Doc. 28, 35).  Equipment Transport only disputes the first element of Runion's *prima facie* case: whether he engaged in protected activity.

### B. *Prima Facie* Retaliatory Discharge Claim

Equipment Transport claims Runion did not engage in protected activity because he did not file a workers' compensation claim with either the Pennsylvania Workers' Compensation Bureau or his employer.  (Doc. 28 at 12-13).  Equipment Transport also argues Runion cannot sustain his retaliatory discharge action on the ground that Equipment Transport had notice of his intent to file for workers' compensation.  (Id. at 13).  Pennsylvania courts have not explicitly extended the public policy exception to at-will employees who merely express an intention to file for workers' compensation.  Equipment Transport views this as a bar to Runion's retaliatory discharge claim.  (Id. at 13).

Pennsylvania courts have provided limited guidance on the proper application of this public policy exception to the at-will employment presumption, stating only that it is an exceedingly narrow exception.  See Shick v. Shirey, 716 A.2d 1231, 1238 (1998) (Flaherty, C.J., concurring); Owens, 103 A.3d at 862, 869; McLaughlin v. Gastrointestinal Spec. Inc., 750 A.2d 283, 290 (Pa. 2000).  District

9

courts in Pennsylvania have grappled with what conduct, short of actually filing a workers' compensation claim, may be sufficient to constitute protected activity. Several federal courts have predicted that the Pennsylvania Supreme Court will determine that injured employees who have expressed their intent to pursue workers' compensation claims to their employers will fall within the ambit of "protected activity." See, e.g., Smith v. R.R. Donnelley & Sons Co., No. 10-1417, 2011 WL 4346340, at *6 (E.D. Pa. Sept. 16, 2011); Worthington v. Chester Downs & Marina, LLC, No. 17-1360, 2017 WL 3457031, at *7 (E.D. Pa. Aug. 11, 2017); Kofa-Lloyd v. Brookside Healthcare & Rehab. Ctr., LLC, No. 14-00668, 2014 WL 1159677, at *3 (E.D. Pa. Mar. 21, 2014).

The reasoning in Smith is particularly persuasive. The court in Smith held that a plaintiff must (1) report the work-related injury and (2) express the "intent to file" a workers' compensation claim to the employer in order to trigger the protection of the public policy exception. Smith, 2011 WL 4346340, at *6. An employer's knowledge of a work-related injury alone is insufficient to establish the plaintiff engaged in protected activity. Id. The court furnished this two-step rule to further the purpose of the public policy exception. Id. This ensures employees seeking workers' compensation have "the opportunity to complete the administrative task" and prevents employers from escaping their obligations under the Workers' Compensation Act. Id. We will follow the lead of our sister courts in the Third Circuit and apply the test laid out in Smith.

1. ***Work-Related Injury***

Ample evidence supports that Runion suffered a workplace injury. Runion swallowed waste material not intended for ingestion while working to clear a line from a Newaltas machine. (Doc. 27-3, Ex. A, Tab D & E). Runion vomited at home several times and sought medical attention at Montrose Hospital emergency room. (Runion Dep. 48:12-49:6; Doc. 27-3, Ex. A, Tab E). Multiple employees were aware that Equipment Transport was testing this waste product for radon or other forms of radiation. (Witbeck Dep. 26:1-29:13; Runion Dep. 55:6-56:18; Pearson Dep. 18:12-20:7). At least two Equipment Transport supervisors reacted strongly to the incident report, with the truck supervisor stating that "it was some pretty nasty stuff that [Runion] had . . . in his mouth." (Witbeck Dep. 17:2-18:14, 24:3-13). The doctor treating Runion took bloodwork and induced vomiting. (Runion Dep. 50:6-8). Surveying the record in the light most favorable to Runion, there is sufficient evidence to establish Runion suffered a workplace injury.

2. ***Filed or Intended to File for Workers' Compensation***

Equipment Transport asserts that Runion did not engage in protected activity because he did not actually file a workers' compensation claim. (Doc. 28 at 14). Indeed, the record is devoid of evidence that Runion filed any claim with the Workers' Compensation Bureau, Equipment Transport, or other appropriate authority. (Doc. 27-3, Ex. G at 7).

Equipment Transport further asserts that Runion did not notify Equipment Transport of his intention to file a claim for workers' compensation. (Doc. 28 at 14). Equipment Transport argues that Runion's sole evidence to the contrary is his

"conclusory, self-serving" deposition testimony which is insufficient to create a genuine issue of material fact. (Id.) The court agrees. Generally, self-serving affidavits and deposition testimony are alone insufficient to withstand a motion for summary judgment when "impeached by a well-supported showing to the contrary." Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263-64 (3d Cir. 2012) (quoting United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993)); Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011) (nonprecedential). Runion relies solely on his own deposition testimony in opposing Equipment Transport's motion. The issue is not whether the testimony is self-serving, but whether Runion's testimony is sufficient for a rational factfinder to credit it when juxtaposed with the other, contrary record evidence. See Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012).

Runion avers that he expressed his intent to file a worker's compensation claim to six individuals: Dr. Hassan Khalil, an unnamed Montrose Hospital nurse, an unnamed Montrose Hospital billing administrator, his labor crew supervisor (Miszler), Miszler's supervisor (Witbeck), and another Equipment Transport supervisor (Vincent). (Runion Dep. 44:4-46:23, 49:21-50:8, 60:6-15, 69:13-22, 70:9-21, 72:12-73:12).

Runion initially testified that he may have mentioned to Dr. Khalil in the Montrose Hospital emergency room that his treatment would be a workers' compensation claim, but later admitted he did not specifically recall. (Id. at 49:21-50:8; 60:6-15). Runion testified that he advised both the hospital billing administrator and the nurse who cared for him of his intent to file for workers'

compensation.  (Id. at 58:24-60:5).  Runion recollects completing paperwork with these hospital employees, but he is unable to provide any documentation to support his recollections or to show he initiated the process of filing a workers' compensation claim at the hospital.  (Id.)  Assuming this testimony to be true, none of the hospital representatives is an employee of Equipment Transport, and Runion adduces no evidence to suggest that anyone informed Equipment Transport of Runion's intent to file a claim.

On the day of the incident, Runion informed Miszler, his direct supervisor, that he was going to go to the hospital to "get checked out" and he "was going to tell the hospital that it was going to be a workers' comp. related incident."  (Id. at 44:3-9).  Runion testified at his deposition that he also informed safety supervisor Vincent, in a one-on-one conversation at the job site, of his hospital visit and that he "put it through workmen's comp. at the hospital."  (Id. at 69:13-22, 70:9-21).  Runion also testified that when Witbeck visited the job site after the incident, Runion apprised Witbeck of the incident, the hospital visit, and that he "put it under workmen's comp."  (Id. at 72:12-73:12).  Other individuals were present for the conversations with Miszler and Witbeck including fellow laborers Nathan Pearson, Dave Husney, and Cody, and a Newaltas representative.  (Id. at 44:4-46:23, 72:12-73:12).

The remainder of the record wholly refutes Runion's version of events. Witbeck testified that Runion never expressed to him a desire to file a workers' compensation claim.  (Witbeck Dep. 18:24-19:1).  He did not know whether Runion had expressed such a desire to anyone else at Equipment Transport.  (Id. at 19:2-

13

20:19). Pearson, who left Equipment Transport shortly after Runion did, testified that he did not know if Runion informed anyone of his intent to file a workers' compensation claim. (Pearson Dep. 13:15-17). Miszler submitted a sworn declaration stating that she was unaware of Runion's intent to file a workers' compensation claim or whether any such filing might have occurred. (Miszler Decl. ¶ 10). Inexplicably, Runion elected not to depose witnesses to the alleged statements he made to Equipment Transport supervisors about his intent to file a workers' compensation claim. Runion did not depose his direct supervisor Miszler, safety supervisor Vincent, or fellow laborers Cody and Dave Husney. Runion provides no documentation of communications with Equipment Transport or its employees regarding a desire to file workers' compensation claim in response to its interrogatories. (Doc. 27-3, Ex. H at 4). Nor does Runion provide any documentary evidence of an attempted or actual filing of a workers' compensation claim at the hospital or with the Workers' Compensation Bureau, which might have been shared with Equipment Transport.

Despite the full benefit of discovery, Runion offers no support beyond his own deposition testimony to corroborate his claim that Equipment Transport was on notice of his intent to file a workers' compensation claim. (Doc. 35 at 3). Runion's self-serving deposition testimony, when juxtaposed against the rest of the record, is insufficient to meet his burden of "point[ing] to some evidence in the record that creates a genuine issue of material fact." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); Irving, 439 F. App'x at 127. Moreover, "arguments made in briefs 'are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion.'" Eastman v. Lackawanna Cty., 95 F. Supp. 3d 773, 783 (M.D. Pa. 2015) (quoting Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Runion's *allegata* of expressed intent to file a workers' compensation claim may have been sufficient to satisfy his pleading burden, but litigation discovery has resulted in a dearth of *probata* in the Rule 56 record. Thus, the court concludes that Runion has not demonstrated that there is a genuine issue of material fact concerning whether he notified his employer of his intent to pursue workers' compensation benefits. The court will grant Equipment Transport's motion for summary judgment on Runion's retaliatory discharge claim for want of record evidence of protected activity.[6]

IV. **Conclusion**

The court will grant Equipment Transport, LLC's motion (Doc. 27) for summary judgment. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: September 1, 2017

---

[6] Runion seeks spoliation sanctions, including but not limited to an adverse inference, against Equipment Transport as a result of Equipment Transport's failure to preserve the tape recording of Runion's alleged terroristic threats against Equipment Transport employees and property. (Doc. 34 at 15-16). Because the court does not reach the issue of whether or not Equipment Transport has a legitimate, non-retaliatory reason for terminating Runion's employment, it is unnecessary to address Runion's request for spoliation sanctions.